```
        THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

                              CENTRAL DIVISION

* * * * * * * * * * * * * * * * * * * * * * * * * * * * * * *
                                    )
STEWART TITLE GUARANTY
COMPANY,                            )      Case No. 2:04CV01191 DS

              Plaintiff,            )

         vs.                        )
                                           MEMORANDUM OPINION
                                               AND ORDER
METRO NATIONAL TITLE,               )

              Defendant.            )

* * * * * * * * * * * * * * * * * * * * * * * * * * * * * * *
```

## I.   INTRODUCTION

This is a suit by Stewart Title Guaranty Company ("Stewart"), a provider of real property title insurance, against Metro National Title ("Metro"), Stewart's former local limited agent for issuing title insurance policies, to collect $866,186.49 in losses that Stewart allegedly incurred in connection with Metro-issued title policies.  Stewart has filed a Motion for Summary Judgment (Doc. #81) under Fed. R. Civ. P. 56 seeking judgment on all eight of its claims.  Because Stewart has failed in its burden of proof, its Motion is denied.

In 1988, Stewart and Metro entered into a Title Insurance Underwriting Agreement (the "Agreement").  Briefly stated that Agreement provides that for each loss to an insured not due to Metro's negligence or fraud, Metro would reimburse Stewart for the

first $2,500. For each loss due to Metro's "negligence, fraud, or intentional act or omission", it would be liable to reimburse Stewart for the entire loss. The Agreement was terminable by either party on 60 days notice, and was so terminated by Stewart as of July 26, 1999.

Stewart's Complaint identifies seven policies of title insurance alleged to have been issued by Metro, or at its request, for which Stewart claims that Metro breached the Agreement and, therefore, is responsible for losses incurred by Stewart. In its eighth and final cause of action Stewart alleges that Metro breached the Agreement when it failed to perform its agents duties as claimed in counts 1-7 of the Complaint.

## II.   SUMMARY JUDGEMENT STANDARD

Under Fed. R. Civ. P. 56, summary judgment is proper only when the pleadings, affidavits, depositions or admissions establish there is no genuine issue regarding any material fact and the moving party is entitled to judgment as a matter of law. The burden of establishing the nonexistence of a genuine issue of material fact is on the moving party.[1]  *E.g., Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986).

---

[1] Whether a fact is material is determined by looking to relevant substantive law.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202 (1986).

This burden has two distinct components:  an initial burden of production on the moving party, which burden when satisfied shifts to the nonmoving party, and an ultimate burden of persuasion, which always remains on the moving party.  *See* 10A C. Wright, A. Miller & M. Kane, *Federal Practice and Procedure* § 2727 (2d ed. 1983).

The central inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."  *Id*.  If the nonmoving party cannot muster sufficient evidence to make out a triable issue of fact on his claim, a trial would be useless and the moving party is entitled to summary judgment as a matter of law.  *Celotex*, 477 U.S. 242, 106 S. Ct. 2505, 91 L. Ed. 2d 202.

### III.   DISCUSSION

Stewart's position is that under the unambiguous terms of the Agreement it is entitled to judgment as a matter of law on each of its eight claims representing seven different title policies allegedly issued by Metro and a final general claim for breach of performance.  In support of its Motion Stewart argues for imposition of strict liability under both Paragraphs 5A and 5B of the Agreement.  In that regard, Stewart asserts:

> In reviewing the Underwriting Agreement as a whole, and giving usual and natural meaning to the requirement of

>    the last sentence in Paragraph 3.A. and the definition of
>    loss in 5.A., it becomes clear that the parties intended
>    to unequivocally establish their own standard of care in
>    certain matters, the violation of which would result in
>    strict indemnity liability.  Once Metro's mistake is
>    established ...the loss to Stewart and the liability of
>    Metro can and should be determined as a matter of law.

Reply p. 9.

Metro's position, on the other hand, is that two different classes of liability exist.  Under Paragraph 5A, strict liability is capped at $2,500.00 per claim, while under the plain language of Paragraph 5B of the Agreement, it asserts negligence liability extends to all losses caused by the negligence of Metro.

The parties agree that the following three paragraphs of the Agreement are critical to resolution of the present matter. Paragraph 3A of the Agreement addresses the duties of Metro.

>    A.  **COMPANY** [Metro] shall conduct its business in a sound
>    and ethical manner and **shall issue** title insurance
>    policies, endorsements, binders and commitments **according
>    to recognized practices** and the **rules and instructions**
>    given by Underwriter [Stewart] or imposed by the
>    Department of Insurance or other regulatory body.  All
>    title policies must be based on a written report of title
>    resulting from a search and examination of those public
>    records, surveys and inspections relevant to the
>    insurance afforded by such policies.  Where outside
>    attorneys are used for examination, they shall act for
>    and be paid by COMPANY, but shall be approved by
>    UNDERWRITER.  Each title policy, binder, commitment and
>    endorsement shall be on a form designated by UNDERWRITER
>    and shall correctly reflect the status of title with
>    appropriate exceptions as to liens, defects, encumbrances

>   and/or objections disclosed by the search and examination
>   of title.

(emphasis added).

Paragraphs 5A and 5B of the Agreement address how any loss will be divided.

>   A.   On each **loss** under a title policy issued pursuant to
>   the Agreement **not due to the COMPANY's** [Metro's]
>   **negligence or fraud**, COMPANY [Metro] shall be liable to
>   UNDERWRITER [Stewart] for the first $2,500.00 of such
>   loss.  The term loss shall include the amount paid to or
>   for the benefit of the insured as well as loss adjustment
>   expense including any cost of defending the claim
>   resulting in the loss.
>
>   B.   On each such **loss due to the negligence, fraud, or
>   intentional act or omission of COMPANY** [Metro] or its
>   employees, representatives, or agents, COMPANY [Metro]
>   **shall be liable** to UNDERWRITER [Stewart] **for the entire**
>   amount of such **loss.  Negligence** as the term is used
>   herein, **includes, but is not limited to** the failure of
>   the title plant, failure to discover or report any
>   instrument of record affecting title, violation of escrow
>   instructions, failure to follow UNDERWRITER'S [Stewart's]
>   instructions, and the failure to prepare a title policy
>   in a manner that properly reflects any instrument
>   contained in the search of title.

(emphasis added).

It is undisputed that the laws of Utah apply in this diversity case.  The Utah rules of contract interpretation are well-settled and have been summarized as follows.

>   The underlying purpose in construing or interpreting
>   a contract is to ascertain the intentions of the parties
>   to the contract. ...

5

> In interpreting a contract, "'[w]e look to the writing itself to ascertain the parties' intentions, and we consider each contract provision ... in relation to all of the others, with a view toward giving effect to all and ignoring none.'" ...
>
> "If the language within the four corners of the contract is unambiguous, the parties' intentions are determined from the plain meaning of the contractual language, and the contract may be interpreted as a matter of law." ... However, if the language of the contract is ambiguous such that the intentions of the parties cannot be determined by the plain language of the agreement, "extrinsic evidence must be looked to in order to determine the intentions of the parties." ... If a contract is ambiguous, the court may consider the parties' actions and performance as evidence of the parties' true intention. ...
>
> An ambiguity exists in a contract term or provision "if it is capable or more than one reasonable interpretation because of 'uncertain meanings of terms, missing terms, or other facial deficiencies.'" ...
> ...
> "Whether an ambiguity exists in a contract is a question of law." ... "When ambiguity exists, the intent of the parties becomes a question of fact." ... "[A] motion for summary judgment may not be granted if a legal conclusion is reached that an ambiguity exists in the contract and there is a factual issue as to what the parties intended." ...

*Webbank v. American General Annuity Service Corp.*, 54 P.3d 1139, 1144-1145 (Utah 2002)(citations omitted).

After careful review, the Court finds that when considered in its entirety the Agreement, as it relates to the division of loss, is not ambiguous because it is not capable of more than one reasonable interpretation. Therefore, the parties intentions are to be determined from the plain meaning of the contract language.

As noted, Paragraph 5A limits damages to $2,500.00 for losses "not due to [Metro's] negligence or fraud". Negligence is not a defined term of the Agreement. Reference in Paragraph 5B, that negligence "includes, but is not limited to" certain identified acts, is not a contractual definition of the word. Rather, as Metro suggest, it simply provides examples of ways in which a title agent may be negligent. Negligence is commonly understood to mean the failure to exercise due care. *See, e.g.*, Merriam-Webster's Tenth Collegiate New Dictionary at 777 (10th ed. 1997)(negligence is the "failure to exercise the care that a prudent person usually exercises").

Reference in Paragraph 3A of the Agreement that Metro's duty is to issue polices "according to recognized practices" is persuasive that the parties intended to be governed by the meaning of negligence as that term is commonly used and understood. The Court takes notice that negligence is commonly determined by referring to the standard of practice in a particular profession or industry.

The Court's conclusion that the parties intended the term negligence to be given its common meaning is further supported by the last sentence of Paragraph 3A. There the Agreement provides that "[e]ach title policy ... shall correctly reflect the status of

title with appropriate exceptions as to liens, defects, encumbrances and/or objections disclosed by the search and examination of title." The meaning of the phrases "correctly reflect", "appropriate exceptions", and "disclosed by search and examination of title" lend themselves to more than one interpretation, unless viewed in relation to the "recognized practices" of the title insurance industry. See *Gilmor v. Macey*, 121 P.3d 57, 64 (Utah App.)("[i]t is axiomatic that a contract should be interpreted so as to harmonize all of its provisions and all of its terms, which terms should be given effect if it is possible to do so"), *cert. denied*, 126 P.3d 772 (2005).

Because Paragraph 3A adopts an industry practice or negligence standard, and because Paragraph 5B imposes liability for negligence, the Court agrees with Metro that the only reasonable interpretation of the Agreement as it relates to division of loss is that for Stewart to recover more that $2,500.00 from Metro on a particular claim based on Metro's negligence, it must establish that any loss was due to Metro's breach of industry practices or standards of care such that it was negligent as the term is commonly understood.

With the forgoing interpretation of the Agreement in mind, the Court examines each of Stewart's eight causes of action in turn.

**First Cause of Action - Far West Bank**

In its first cause of action Stewart claims that it suffered a loss of $3,907.56 in attorneys' fees and litigation costs when it was obligated to defend its insured in a mechanic's lien foreclosure action.  Because it determined that the loss was not due to Metro's negligence or fraud, it claims as a matter of law that Metro is obligated to pay it $2,500.00 under Paragraph 5A of the Agreement, which it alleges Metro has failed to pay.

Metro, supported by documentation and declaration, contends that it has already paid the $2,500.00 claim.

Because a material issue of fact is in dispute, Stewart's motion as to the First Cause of Action of the Complaint is denied.

**Second Cause of Action - Rubber Ball Productions**

In its second cause of action Stewart claims that it suffered a loss of $6,806.08 in attorneys' fees and costs, plus $5,000.00 to settle the case, when it was obligated to defend its insured in a mechanic's lien foreclosure.  Because it determined that the loss was not due to Metro's negligence or fraud, Stewart claims as a matter of law that Metro is obligated to pay it $2,500.00 under Paragraph 5A of the Agreement, which it alleges Metro has failed to pay.

Metro asserts that the policy was issued at the express direction of Stewart through its agent Arlen Taylor, who specifically acknowledged to Metro that Metro was not responsible for this claim because it was issued at Stewart's request. A. Newman Decl. ¶¶ 3-5.

Because an issue of material fact is in dispute, Stewart's motion as to its second cause of action must be denied.

**Third Cause of Action - Hollow Pointe, LC**

In its third cause of action Stewart claims that Metro's agent, Coalition Title Agency, Inc., issued a policy under which Stewart suffered a loss when it was obligated to defend its insured. Stewart claims a loss of $4,369.58 in fees and costs. Because it determined that the loss was not due to Metro's negligence of fraud, Stewart claims as a matter of law that Metro is obligated to pay it $2,500.00 under Paragraph 5A of the Agreement, which it claims that Metro has failed to pay.

Metro asserts that the Hollow Pointe Policy was issued by Coalition Title Agency, and that the testimony Stewart cites shows only that Coalition and Metro referred customers to each other.

Metro's Newman specifically denies that Coalition Title Agency was acting as Metro's agent.  A. Newman Decl. ¶ 6.

Because issues of fact and/or law are in dispute, Stewart's Motion as to its third cause of action must be denied.

**Fourth Cause of Action - First Western National Bank**

In its fourth cause of action Stewart claims that it suffered a loss of $23,553.88 in attorneys' fees and costs when it was obligated to defend its insured.  Because it determined that the loss was due to Metro's negligence in failing to properly report an instrument of record adversely affecting First Western's lien on the insured property, Stewart claims as a matter of law that Metro is obligated to pay it for the entire loss, which Metro has failed to pay.

Metro urges that Stewart has failed to present sufficient evidence to establish as a matter of law that it was negligent as required by the Agreement.  The Court agrees.  Stewart asserts in conclusory fashion that its loss on the First Western claim was due to Metro's negligence in failing to discover an instrument affecting title.  But Stewart has failed to offer evidence establishing that Metro failed to exercise due care or to follow

11

recognized practices in issuing the policy.  Stewart's Motion as to its third cause of action, therefore, must be denied.

**Fifth Cause of Action - Arnold Industries, Inc**.

In its fifth cause of action Stewart claims that it suffered a loss of $738,132.61 when it was obligated to defend and settle a legal action on behalf of its insured.  Because it determined that the loss was due to the intentional act or omission or the negligence of Metro, Stewart claims that Metro is obligated to pay Stewart for the entire loss which Metro has failed to pay.

The Court agrees with Metro that because insufficient evidence has been presented establishing that the loss was due to any intentional act or omissions or the negligence of Metro, Stewart's motion as it relates to its fifth cause of action must be denied.  Stewart has failed to establish that Metro failed to exercise due care or to follow recognized practices in issuing the title policy to Arnold Industries, Inc.  Indeed, the Court notes that Stewart contended during its representation of Arnold Industries that the County Recorder had misfiled the deed purportedly granting the easement, and that the deed was not discoverable through a reasonable search of the property records.

**Sixth Cause of Action - Draper Land Limited Partnership**

In its sixth cause of action Stewart claims that it suffered a loss of $10,000.00 in settlement costs after it was obligated to investigate and resolve competing ownership interests in the insured property.  Because it determined that the loss was due to Metro's omission or negligence, Stewart claims as a matter of law that Metro is obligated to pay Stewart the entire amount.  Stewart represents that Metro previously paid it $2,500.00.

The Court agrees with Metro that because insufficient evidence of its negligence has been presented as is required under paragraph 5B of the Agreement, Stewart's Motion as to its sixth cause of action must be denied.  Stewart has failed to establish that Metro failed to exercise due care or to follow recognized practices in issuing the title policy.

**Seventh Cause of Action - C. Dean Clark, D.P.M.. Inc.**

In its seventh cause of action Stewart claims that it suffered a loss of $92,000.00 for appraisal costs after it was obligated to resolve the issue of a missed railroad easement with its insured. Stewart represents that Metro previously paid $2,500.00 leaving a balance due of $89,500.00, which Metro refuses to pay.  Because Stewart asserts that it determined that the loss was due to Metro's

omission or negligence, it claims as a matter of law that Metro is obligated to pay Stewart the entire amount.

Because Stewart has offered insufficient evidence of Metro's alleged negligence to be entitled to judgment as a matter of law, Stewart's Motion as to its seventh cause of action must be denied. As noted in connection with some of its other claims, Stewart likewise here has failed to establish that Metro failed to exercise due care or to follow recognized practices in issuing the title policy.

### Eight Cause of Action - Breach of Written Contract

Stewart's eighth cause of action claims that Metro failed to perform its duties as a limited agent to Stewart by issuing the policies referenced above according to recognized practices. Stewart makes no separate argument in support of this claim.

For the reasons set forth above denying Stewart's Motion as to claims 1-7, Stewart's Motion as to its eight cause of action must also be denied.

**CONCLUSION**

For the reasons stated, Stewart's Motion for Summary Judgement (Doc. 81) is denied in its entirety.

IT IS SO ORDERED.

DATED this 22nd day of March, 2007.

BY THE COURT:

*David Sam*

DAVID SAM
SENIOR JUDGE
UNITED STATES DISTRICT COURT